Case 1:19-mj-00910-ADC   Document 3   Filed 04/02/19   Page 1 of 14

FILED ___ ENTERED
___ RECEIVED
APR 02 2019
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE SEARCH: )
)
Black 2019 Volvo SUV bearing Maryland )
License Plate Number 6DG2921 )

**19-0910 ADC**

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, James D. Norton, a Task Force Officer with the Drug Enforcement Administration (the "DEA"), being duly sworn, depose and state that:

1. Your Affiant makes this Affidavit in support of an application under Federal Rule of Criminal Procedure 41 for a warrant, authorizing the search the black 2019 Volvo SUV bearing Maryland license plate number 6DG2921 registered to PV Holding Corporation located at 7432 New Ridge Road, Hanover, Maryland 21076, as fully described in Attachment A (hereinafter referred to as the "**SUBJECT VEHICLE**"), for the items specified in Attachment B and the seizure of those items.

2. Your Affiant submits that probable cause exists to believe that Watson Patrick Bruce ("**BRUCE**") has used the **SUBJECT VEHICLE** to facilitate drug trafficking crimes in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 846; and (2) the **SUBJECT VEHICLE** contains evidence, fruits, and instrumentalities of drug trafficking activities.

### Affiant's Background

3. Your Affiant is an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in 18 U.S.C. § 2516.



4.   Since November 2013, your Affiant has been a Task Force Officer with the DEA, assigned to the DEA High Intensity Drug Trafficking Areas Group 43. Your Affiant also works at the Calvert County (Maryland) Sheriff's Office ("CCSO") Drug Enforcement Unit ("DEU") for over ten years, rising to the level of Detective over five years ago.

5.   As a DEA Task Force Officer, your Affiant has participated in numerous drug investigations, several of which were Organized Crime Drug Enforcement Task Force investigations. During these investigations, your Affiant has performed duties associated with electronic surveillance including, but not limited to, serving as the lead case agent, monitoring consensual telephone calls, conducting physical and pole camera surveillance, listened to hundreds of court-authorized intercepted calls between individuals involved or suspected to be involved in drug trafficking activities, reviewing court-authorized intercepted text messages, interpreting the court-authorized intercepted calls and texts, and transcribing those calls. In addition, your Affiant has worked directly with confidential sources and informants to conduct controlled drug purchases; has debriefed them; and has interviewed drug dealers and users about their lifestyle, appearance, and habits. Moreover, your Affiant has applied for search warrants, arrest warrants, and Title III wire intercepts; executed search warrants; and seized evidence related to drug trafficking, including substantial quantities of narcotics and drug paraphernalia.

6.   As a Detective with the CCSO DEU, your Affiant has investigated narcotics trafficking, firearms trafficking, and overdose related deaths. During those investigations, your Affiant has served as an affiant of search warrants and for which their execution led to the seizure of firearms, narcotics, drug paraphernalia, and documents relating to the distribution of narcotics as well has arrested those who violated state gun and drug laws and the state of Maryland successfully prosecuted.



7.  Your Affiant also received specialized training in drug importation, manufacture, concealment, and distribution; drug recognition and interdiction; crime scene investigations; evidence collection; gang investigations; interviews and interrogation; and cellular telephone forensics and analysis. Your Affiant earned an Associate in Arts in Criminal Justice from the College of Southern Maryland in La Plata, Maryland.

8.  Based on your Affiant's training, knowledge, and experience, your Affiant has become familiar with the following: (1) the manner in which drug traffickers (a) transport, store, and distribute drugs as well as (b) collect, keep, and conceal the proceeds of their illegal activities; and (2) the ways in which drug traffickers use cellular telephones, cellular telephone technology, coded communications or slang during conversations, and other means to facilitate their illegal activities and thwart law enforcement investigations.

9.  Specifically, based on your Affiant's training, knowledge, and experience, your Affiant learned that persons involved in illegal drug distribution commonly do the following:

   a.  Maintain a supply of illegal drugs, items used in the manufacturing, packaging, and transportation of illegal drugs, packing materials, scales, other drug paraphernalia, and owe sheets in their residences and vehicles.

   b.  Conceal contraband related to such illicit activities—such as scales, razors, packaging materials, cutting agents, cooking utensils, microwave ovens, pots, dishes, and other containers—in locations where they can readily access them, such as their residences, their vehicles, the residences of their friends, family members, and associates, or their drug distribution locations, such as a stash house or a safe house.

   c.  Maintain keys to safe deposit box, books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of illegal controlled substances. Dealers in illegal controlled substances maintain the aforementioned enumerated items where they have ready access to them, such as in secured locations within their residence, the residences of their friends, family members, and associates, or their drug distribution locations. Moreover, drug traffickers commonly maintain such items on cellular telephones, computers, computer diskettes, optical disks, thumb drives,



        laptop computers, personal tablets, and other personal electronic devices.

d.      Conceal in their vehicles, their residences or the residences of their friends, family members and associates, their drug distribution locations, or other places over which they maintain dominion and control large quantities of United States currency, financial instruments, precious metals, jewelry, and other items of value. The United States currency are typically drug proceeds while drug traffickers typically use such proceeds to purchase financial instruments, precious metals, jewelry, and other items of value.

e.      Maintain addresses, telephone numbers and books, or papers that reflect names, addresses and/or telephone numbers for their associates in their illegal organization. Drug traffickers often use cellular telephones to maintain their co-conspirators names and contact information. These telephone records, bills, and pager numbers are often found in their residence, or the residence of their friends, family members, and associates, or their drug distribution locations.

f.      Take, or cause to be taken, photos of themselves, their associates, their property, and illegal contraband. Drug traffickers usually maintain these photos in their residence, vehicles, or electronic devices or on their person.

g.      Indicia of occupancy, residency and/or ownership of the property to be searched are often present in such property.

## Basis of Information

10.      The facts set forth in this Affidavit are based upon (a) your Affiant's personal knowledge; (b) review of evidence developed through surveillance and obtained from this investigation; (c) communications with others who have personal knowledge of the events and circumstances described herein, as well as (e) information that your Affiant gained through training and experience. Because your Affiant submits this Affidavit for the limited purpose of establishing probable cause for the requested complaint and warrants, he has not included every detail of this investigation. Instead, your Affiant has included in this Affidavit only those facts that are sufficient to support a probable cause finding for the issuance of the requested complaint and warrants.

**Probable Cause**

11. In October 2017, the DEA and the CCSO DEU began investigating heroin traffickers operating in the Anne Arundel County area. Among the targets of this investigation is **BRUCE**.

12. The intercepted calls and texts occurring over the cellular telephone assigned call number **(410) 212-8980** with International Mobile Subscriber Identity ("IMSI") 310120153606409, subscribed to John Wright, the subscriber address of 2406 Autumn Harvest Court Odenton, Maryland 21113, and used by **BRUCE**, whose service provider is Sprint Corporation ("SPRINT") (hereinafter referred to as "**Target Telephone 1**") and the cellular telephone number **(443) 804-0072** with IMSI 310120227102162, subscribed to no name listed, the subscriber address is not listed, and used by **BROWN**, whose service provider is SPRINT (hereinafter referred to as "**Target Telephone 2**") confirmed that **BRUCE** is a significant drug distributor who is supplied, in part, by **BROWN**.

13. Some of the pertinent intercepted conversations and surveillance in connection with those conversations show that probable cause exists to believe that **BRUCE** used the **SUBJECT VEHICLE** in furtherance of drug trafficking crimes are summarized as follows:

   a. On February 23, 2019, at approximately 4:32 p.m., **BRUCE**, via **Target Telephone 1**, placed an outgoing call to **BROWN**, via **Target Telephone 2**. Here is their conversation:

   > **BRUCE**: Hello. **BROWN**: Yeah, game over? **BRUCE**: Not yet, not yet, it's like, I think it's the fourth quarter. **BROWN**: Huh? **BRUCE**: We in the fourth, we in the fourth quarter, it ain't over yet, Ima call you once it's over. **BROWN**: Ok, well I'm leavin now so what do you want me to do? **BRUCE**: Alright 20 Amberstone Court initial J. **BROWN**: Yeah, what you say, wait a minute, let me, let me pull over. Alright let me get out here and then pull over to the side. **BRUCE**: Good


shot. **BROWN**: Ok you say 20 Amberstone Court? **BRUCE**: Amberstone Court yeah. **BROWN**: Yeah 20 Am, Amberstone Court. **BRUCE**: Yeah. **BROWN**: Uh Annapolis, Maryland. **BRUCE**: Yep. **BROWN**: Ok, is that, is, is Amberstone one word or two words? **BRUCE**: One word. **BROWN**: Ok that's one word um. **BRUCE**: Yeah. **BROWN**: Amberstone Court. **BRUCE**: Yeah. **BROWN**: Ok let me put, let me, I'm gettin ready to pull over to the side and put it in my GPS, so you just want me to head on down? **BRUCE**: Yeah just head on down. **BROWN**: Ok I been tryin to call Nadia, but she ain't answer. **BRUCE**: Nah, she just came and showed me that you was callin and I looked at my phone and seen that you called and then I called you right back. **BROWN**: Yeah I was callin Nadia and she never answered. **BRUCE**: You know what call her phone, cuz she prolly, and make sure, make, hold on Ima, hold on I'm ready to text her, hold on (U/I). **BROWN**: Ok Ima still put the address in. **BRUCE**: Yeah I'm ready, I'm ready to get, I'm ready. (**BRUCE** is talking to Nadia **TUCKER** in the background: Hey whats the address. **TUCKER**: 20 Amberstone Court. **BRUCE**: Alright.) Yeah 20 Amberstone Court that's right, that's what I just said. **BROWN**: Where Nadia at, she with you? **BRUCE**: Yeah. **BROWN**: Yeah tell her I been callin her, she ain't answer the phone. **BRUCE**: I know she just answered, she just told me to call you. **BROWN**: Oh, ok. **BRUCE**: When you was callin her. **BROWN**: 20 Amberstone Court, Annapolis, Maryland. **BRUCE**: Yeah, yeah. **BROWN**: (**BROWN**'s GPS is going off in the background and says here's a map 20 Amberstone Court, Annapolis, Maryland and starts giving directions.) Ok. **BRUCE**: Alright. **BROWN**: Ok, alright, right, right, right.

Based on investigators' training, knowledge, and experience, they know that large scale narcotics dealers (1) commonly do not discuss their narcotics business over the phone; and (2) if they have ongoing relationship with each other, large scale narcotics dealers need not disclose the amount of narcotics or money in exchange for those narcotics as both parties rely on their past dealings. Based on investigators' training, knowledge, and experience, they believed that **BROWN** and **BRUCE** were using coded, vague language to (1) confirm their meeting during which **BRUCE** would purchase heroin from **BROWN**, although neither **BROWN** nor **BRUCE** mentioned the amount of heroin or money; and (2) firm up the location for the drug transaction, specifically

6

**Target Location 1**. Indeed, investigators observed **BROWN** driving a 2011 silver Honda Crosstour registered to Larry Michael Brown at 5531 Bosworth Avenue, Gwynn Oak, Maryland, 21207 (hereinafter referred to as "**BROWN's Vehicle**") onto Amberstone Court and parking **BROWN's Vehicle** in the lot facing 20 Amberstone Court Unit J, Annapolis, Maryland 21403 (hereinafter referred to as "**Target Location 1**") at approximately 5:16 p.m.; **BRUCE** driving the **SUBJECT VEHICLE** and parking it in front of **Target Location 1** shortly after; and **BRUCE** entering **BROWN's Vehicle** seconds later. Based on investigators' training, knowledge, and experience, they (1) know that **BROWN** and **BRUCE** commonly met in one of their vehicles to discuss and/or conduct hand-to-hand narcotics transactions and (2) believe that **BRUCE** purchased heroin from **BROWN** during their meeting.

   b. On February 26, 2019, at approximately 5:10 pm, **BROWN**, via **Target Telephone 2**, placed an outgoing call to **BRUCE**, via **Target Telephone 1**. Here is their conversation:

> **BRUCE**: What's going on? **BROWN**: Hey, uh, what's your location? **BRUCE**: I'm in the, I'm in the house. **BROWN**: Alright, you in the house? **BRUCE**: Yeah. **BROWN**: Uh, OK. Yeah, uh, I need the, I need to like uh, you know, get up with you. **BRUCE**: Oh yeah. **BROWN**: Yeah, like you know, the Gooseman, the old Gooseman around. **BRUCE**: Oh yeah. **BROWN**: Yeah, the Gooseman. (Laughs). **BRUCE**: Damn. **BROWN**: I really, like you know, and plus that other demo you was talking about to. So I, you know I just wanted to, like touch bases with you real quick. You know what I mean? **BRUCE**: Yeah. Damn, uh, I need to run up to you man, I don't know, I just got off at seven. I worked till motherfuckin' five. **BROWN**: No, no, no, that's fine, no, I'm just saying, you, you can tell me, uh, we can go after the traffic that's fine, you can tell me eight, you can tell me nine, it, it does not matter. **BRUCE**: Yeah, yeah I'll run up to you after the traffic. **BROWN**: OK, so what you want to go with like eight, you want to go with eight or nine? You, you just tell me nephew. **BRUCE**: Like around eight. Around, around, around like eight, around eight, I'll say eight. **BROWN**: OK, yeah eight

7



is good. So, uh, where you want to swing by? You, you want to go with uh, you want to go with T-Mobile or, or do you need me to come a little further. **BRUCE**: Probably need you to come a little, probably need you to come to the big store. **BROWN**: Huh? **BRUCE**: Probably need you to come to the big store. **BROWN**: OK, you talking about your big store. **BRUCE**: Yeah, my big store. **BROWN**: That's fine. OK, I'll tell you what, uh, like, I can see you like, at your big store to. Now, uh, now what about the classic, you want (UI) hold on, hold on on the classic or, and, and see where you at with uh, you know with the small, you know that I catch you with or what. **BRUCE**: Yeah, I want, yeah, I want to see where I'm with that, yeah. **BROWN**: OK, then I'll just hold up on, you know, the classics, I still got those classic uh jersey's too. **BRUCE**: Yeah. **BROWN**: Right, I'll see you then; right, I'll see you at eight. Uh, at uh, what about that Chick-fil-A? **BRUCE**: Alright, bet, no problem, good deal. **BROWN**: Yeah, Chick-Fil-A at eight. **BRUCE**: Alright. **BROWN**: Alright, see you.

Based on investigators' training, knowledge, and experience, they believe that, in a vague, coded language, **BROWN** and **BRUCE** (1) arranged a drug deal during which **BROWN** would sell **BRUCE** heroin in exchange for money when **BROWN** said "I need to like uh, get up with you" to **BRUCE**; (2) discussed a new batch of heroin that **BRUCE** and **BROWN** previously discussed for **BRUCE**'s customers to try when **BROWN** said "plus that demo you was talkin about"; (3) talked about the heroin that **BROWN** usually supplies to **BRUCE**, when **BROWN** referred to "the classic;" and (4) agreed to meet at Chick-Fil-A located at 7831 Quarterfield Park Drive, Severn, Maryland 21144, which is across the street from the AT&T store located 404 George Clauss Boulevard Severn, Maryland 21144, to conduct the drug transaction. Indeed, the data from the tracking device on **BROWN's Vehicle** that Honorable Stephanie A. Gallagher authorized on January 16, 2019 shows that **BROWN's Vehicle** traveled directly from **Target Location 2** to the initially agreed-upon location at which **BROWN** and **BRUCE** conducted that drug transaction. Additionally, on the same day, law enforcement observed (1) **BRUCE** arrive in the **SUBJECT**

VEHICLE at the AT&T store at approximately 8:17 p.m.; (2) **BROWN** arrive in **BROWN's Vehicle** there at approximately 8:19 p.m.; (3) **BRUCE** and **BROWN** enter the **SUBJECT VEHICLE** at approximately 8:22 p.m.; (4) **BROWN**, appearing to have an object under his jacket, exit the **SUBJECT VEHICLE** and enter his **BROWN's Vehicle** at approximately 8:34 p.m., and (5) **BRUCE** in the **SUBJECT VEHICLE** and **BROWN** in **BROWN's Vehicle** depart that area at approximately 8:35 p.m. Based on investigators' training, knowledge, and experience, they believe that **BRUCE** purchased heroin from **BROWN** in exchange for money inside of the **SUBJECT VEHICLE**.

  c. On February 27, 2019, at approximately 5:12 pm., **BROWN**, via **Target Telephone 2**, placed an outgoing call to **BRUCE**, via **Target Telephone 1**. Here is their conversation:

> **BRUCE**: I'm waiting, I'm waiting on that reading right now.
> **BROWN**: OK. Uh, don't forget to send me the readings. (Pause).....OK. **BRUCE**: Yep. I won't, I won't forget. OK, alright. OK, later.

Based on investigators' training, knowledge, and experience, they know that heroin dealers use (1) the street terms (a) "demo" to refer to a new heroin batch and (b) "testers" to refer to new heroin given to customers to test the quality; (2) commonly obtain different types of heroin; and (3) send "testers" of a new heroin batch to their customers and wait for their customers to provide feedback about the quality of that heroin. Based on investigators training, knowledge, and experience, they believe that, in code, vague language, **BROWN** followed up with **BRUCE** about the heroin that **BRUCE** obtained from **BROWN** the day before; and **BRUCE** indicated that he was still waiting for his customers to let him know about the quality of that new batch of heroin and assured **BROWN** that he would relay his customers' feedback about that heroin's quality to **BROWN**.

14. On March 14, 2019, Honorable Stephanie A. Gallagher signed, inter alia, the Criminal Complaint and arrest warrant for **BRUCE**, charging him with conspiracy to distribute and possess with the intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. 846; possession with intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. 841(a)(1); and use of communication facilities to facilitate the commission of such offenses, in violation of 21 U.S.C. 843(b).

15. On March 15, 2019, at approximately 6:30 a.m. investigators conducted surveillance of the **SUBJECT VEHICLE** that was parked at the Why Hotel located at 225 N. Calvert Street, Baltimore, Maryland 21202. They observed **BRUCE** walk towards and unlock the **SUBJECT VEHICLE** as well as attempt to enter the driver's side door. Law enforcement then arrested **BRUCE**.

16. During a search incident to arrest, law enforcement recovered, inter alia, two cellular telephones from **BRUCE**'s right front pocket, approximately $6,000 in cash, and suspected heroin and cocaine in a plastic knotted bag.

17. Law enforcement transported the **SUBJECT VEHICLE** to a secure location pending this request for a search warrant.

18. On the same day, investigators requested the Prince George's County Police Department canine support for a fresh air scan of the **SUBJECT VEHICLE** to determine whether there was probable cause that the **SUBJECT VEHICLE** contained narcotics. The Prince George's County Police Department canine, Spike,[1] scanned the exterior of the **SUBJECT VEHICLE**. At approximately 8:30 a.m., Spike positively alerted to the presence of narcotics in

---

[1] "Spike" was certified in April 2018 to alert on odors of cocaine, crack cocaine, heroin, methamphetamine, and ecstasy and is trained once a month to ensure his accuracy. Prince George's County Police Department Corporal James Kelly is Spike's handler.

the **SUBJECT VEHICLE**.

19-0910 ADC

### Conclusion

19. Based on the information set forth in this Affidavit, your Affiant submits that probable cause exists to believe that (a) **BRUCE** has used the **SUBJECT VEHICLE** in furtherance of drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846; and (b) the **SUBJECT VEHICLE** contains evidence, fruits, and instrumentalities of drug trafficking activities.

20. Accordingly, your Affiant requests that this Court issue a search and seizure warrant authorizing the search of the **SUBJECT VEHICLE**, as fully described in Attachment A, for the items listed in Attachment B, which constitute evidence, fruits, and instrumentalities of drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, and the seizure of the items listed in Attachment B.

TFO James [signature]
James D. Norton
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn before me this 15th day of March, 2019.

[signature]
Honorable A. David Copperthite
United States Magistrate Judge



19 - 0 9 1 0   ADC

## Attachment A:  SUBJECT VEHICLE

The property to be searched is described as follows:  the black, four-door 2019 Volvo SUV bearing Maryland license plate number 6DG2921 registered to PV Holding Corporation located at 7432 New Ridge Road, Hanover, Maryland 21076 ("**SUBJECT VEHICLE**").

## Attachment B: Items to be Seized From the SUBJECT VEHICLE

This warrant authorizes the search and seizure of all records and items relating to violations of 21 U.S.C. §§ 841 (a)(1), 843(b), 846, by Watson Patrick Bruce a/k/a Tree and his known and unknown co-conspirators, including, but not limited to, the following:

1. Controlled substances.

2. Drug paraphernalia, including, but not limited to, scales, plastic bags, drug wrappers, chemical test kits, metal pressing devices used for compressing cocaine, heroin, and other controlled substances.

3. Documents, books, and papers, reflecting names, addresses and/or telephone numbers of co-conspirators, customers, and suppliers.

4. Photographs, in particular, photographs of co-conspirators, controlled substances, sums of money, vehicles, jewelry, and/or assets.

5. Books, records, receipts, notes, ledgers, diaries, journals, designated codes and other papers relating to the purchase, importation, transportation, manufacture, sale, and distribution of controlled substances.

6. Currency, bank statements and records, other financial statements, money drafts, letters of credit, money orders and cashier checks, passbooks, bank checks, credit card statements, employment or payment records, loan applications and records, real estate records, real estate rental agreements, property deeds, vehicle titles, money wires and transfers, stocks, bonds, precious metals, jewelry, and any other items evidencing the obtaining, secreting, transfer, and concealment of assets and expenditure of money.

7. Indicia of occupancy and ownership of the **SUBJECT VEHICLE**, including but not limited to, correspondence and photographs.

8. Identification documents.

9. Safe deposit box keys, safe deposit box documents, storage unit documents, safe combinations, storage unit keys, records and agreements for payment, and other documents and items evidencing the obtaining, secreting, holding, transfer, and/or concealment of controlled substances.

10. Cellular telephones, pagers, beepers, or other electronic communications devices.

11. Documents or other records relating to court proceedings involving other co-conspirators, including, but not limited to, charging documents and bail records.

12. Records of travel including, but not limited to, tickets, boarding passes, transportation schedules, passports, visas, notes, motel and hotel receipts, and other receipts related to travel.

13. Locked or closed containers, boxes, receptacles that contain any of the items listed in Nos. 1 – 12 of this attachment.

14. Locked or unlocked safes, boxes, suitcases, cabinets, or other secure storage containers (and law enforcement officers may drill the same).

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (*e.g.*, hard disks or other media that can store data); any handmade form (*e.g.*, writing); any mechanical form (*e.g.*, printing or typing); and any photographic form (*e.g.*, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).